IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HUMANLY POSSIBLE, INC. )
)
        Plaintiff, )
)
v. ) No. 11 C 4977
)
MANPOWER, INC., d/b/a )
MANPOWERGROUP, and )
RIGHT MANAGEMENT INC. )
)
        Defendants. )

## OPINION AND ORDER

Plaintiff Humanly Possible, Inc. is a consulting and education services company located in Illinois. Defendant Manpower, Inc., doing business as ManpowerGroup ("Manpower"), is a global company providing various workplace recruitment and human resource services. Defendant Right Management Inc. is a subsidiary of Manpower that provides business management consulting. There is no need to distinguish between the two defendants as to liability. Since 2011, defendants have used the words "humanly possible" in promotional materials. Plaintiff alleges that defendants' use constitutes trademark infringement and false

in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). Plaintiff has registered as a trademark the words HUMANLY POSSIBLE in solid capital letters. Plaintiff uses the words Humanly Possible in its corporate name with initial capitals followed with the abbreviation Inc. Plaintiff also brings state law claims for common law trademark infringement, common law unfair competition, and violations of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2.[1] Presently pending are cross motions for summary judgment.

Plaintiff describes its activities as follows:

Humanly Possible, Inc. works with mid-size nonprofit organizations in the Chicago area and beyond. We believe that your people--your directors, yoru leaders, your staff, and your volunteers--are the key to your organization's success. We seek clients who

- Wish to expand their impact
- Want to be confident of their organizations's sustainability
- Will work cooperatively to plan their future and implement their plan.

---

[1] In addition to supplemental jurisdiction over the state law claims, there is diversity jurisdiction. There is complete diversity of citizenship and the amount in controversy exceeds $75,000. The parties agree that there is no need to separately consider the state law claims because the same standards apply to both the federal and state law claims.

Below we list a selection of our nonprofit and government clients and their projects in order to give a sense of the great variety of challenges on which we enjoy working:

- Spertus Institute of Jewish Studies
  *Organizational Improvement focused on internal unity and cooperation with regard to mission, vision and programming*

- National Kidney Foundation of Illinois
  *Design and evaluation of corporate and factory workplace education aimed at increasing organ donation*

- North West Hospital (Australia)
  *Organizational assessment of staff and patient satisfaction and well-being, culminating in recommendations for future services, organizational innovation, and management and training initiatives*

- Chapin Hall
  *Management coaching, dyadic coaching, and performance coaching aimed at improving supervisory effectiveness, clarifying roles and responsibilities, and helping staff meet performance expectations*

- United States Customs and border Protection
  *Leadership training and development focused on change and innovation*

Plaintiff also describes itself and identifies its clients as follows:

Humanly Possible® was founded in 1991 by Jackie Gnepp and Joshua Klayman. Joshua Klayman has been on the faculty of

the University of Chicago Graduate School of Business for over 20 years and is an expert in organizational change, knowledge management, and decision making. [C]lients have included Ameritech - IBM - Royal Dutsch Shell - L'Oreal - Accenture - The Interpublic Group - Bell South - Market Day - Northern Indiana Power (NIPSCO) - North West Hospital, Australia - The University of Chicago Hospitals - The University of Chicago Graduate School of Business - The Bank Administration Institute - Le Centre European d'Education Permanente (CEDEP), France.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits

or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324; *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95 (7th Cir. 2007); *Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary

facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw*, 259 F.3d at 837.

Because defendants are entitled to summary judgment dismissing plaintiff's cause of action, it is unnecessary to separately address plaintiff's motion. Defendants contend they are entitled to summary judgment because plaintiff fails to meet its burden of providing evidence supporting a genuine factual dispute that defendants' use of humanly possible is likely to confuse. Alternatively, defendants contend undisputed evidence supports the affirmative defense of fair use. The

facts set forth below resolve all genuine factual disputes and draw all reasonable inferences in plaintiff's favor.

All the claims require the same two elements: (1) a protectable mark and (2) that the use of the mark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 & n.8 (7th Cir. 2001); *Bd. of Regents of Univ. of Wisc. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 471 (7th Cir. 2011); *Coach, Inc. v. Diva's House of Style*, 2012 WL 6049722 *4 (N.D. Ind. Dec. 5, 2012). Defendants contend the second element is not satisfied. Factors to consider in determining whether there is a likelihood of confusion include: "1. the similarity between the marks in appearance and suggestion; 2. the similarity of the products; 3. the area and manner of concurrent use; 4. the degree of care likely to be exercised by consumers; 5. the strength of the plaintiff's mark; 6. any actual confusion; and 7. the intent of the defendant to 'palm off' his product as that of another." *Phoenix Int'l*, 653 F.3d at 454. *Accord AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008); *Packman*, 267 F.3d at 643. "No single factor is dispositive. Courts may assign varying weight to each of the factors depending on the facts presented, though usually the similarity of the marks, the defendant's intent, and actual confusion are particularly important."

*AutoZone*, 543 F.3d at 929. *Accord Packman*, 267 F.3d at 643; *Deckers Outdoor Corp. v. Does 1-100*, 2013 WL 169998 *3 (N.D. Ill. Jan. 16, 2013).

Defendant Manpower is a global staffing company that provides contingent and permanent staffing solutions to its clients. It operates through four brands: Manpower, ManpowerGroup Solutions, Experis, and Right Management. Right Management provides business management consulting solutions, including talent and career management and outplacement services. Right Management's target customers are large corporate clients with worldwide operations.

Plaintiff's staff consists of two employees, both located in Illinois, while defendants have staff around the world. Plaintiff has used HUMANLY POSSIBLE since 2000. As of October 2011, its sales since inception totaled $875,000. Some of plaintiff's clients have been international companies, but there is no evidence as to how much consulting has been done for such companies. In light of the total revenues, though, it was not substantial. Some possibly overlapping services that both plaintiff and defendants provide are consulting on organizational change and strategy, team development, talent management, leadership development, and career transition decisions.

Plaintiff markets itself as Humanly Possible, Inc., and has a registered mark for HUMANLY POSSIBLE. In a marketing campaign begun in 2011, defendants have repeatedly used the words humanly possible in sentences describing services they offer. Defendants have emphasized the personal and human nature of their services. There are promotional materials for Manpower as a whole that use humanly possible and also reference all four of Manpower's brands, including Right Management. However, there are no promotional materials solely for Right Management that use humanly possible. The all-brand promotional materials do not use humanly possible on the same page or screenshot[2] on which Right Management appears.

Examples of the use of humanly possible in promotional materials include:

> At Manpower®, we understand that every achievement is only possible because it's humanly possible.
>
> Accelerating business growth is humanly possible.
>
> Business agility is humanly possible.
>
> Predicting China's future is humanly possible.

---

[2]One example of promotional materials that is provided is a website video.

Business growth is humanly possible.

ManpowerGroup brings you innovative workforce solutions that power your business success and make the seemingly impossible humanly possible.

Your success is humanly possible.

Every leap forward is only possible because it's humanly possible.

Every breakthrough is only possible because it's humanly possible.

Powering the world of work is humanly possible.

Getting to your goals faster is humanly possible.

Peak performance is humanly possible.

Crushing cubes is humanly possible.

Relentless growth is humanly possible.

Rising above is humanly possible.

Hardwiring the future is humanly possible.

Absolute clarity is humanly possible.

Getting there faster is humanly possible.

Elevating potential is humanly possible.

Finding the next rock star is humanly possible.

A deeper talent pool is humanly possible.

Accuracy and assurance are humanly possible.

Building a better way is humanly possible.

Driving innovation is humanly possible.

Breaking through is humanly possible.

Connecting to your ideal career is humanly possible.

Amplifying your career is humanly possible.

Finding your career focus is humanly possible.

Shattering job limitations is humanly possible.

Climbing higher faster is humanly possible.

Every leap forward is only possible because it's humanly possible.

In all materials using humanly possible, Manpower and/or another of defendants' marks is prominent. In many of the examples provided, the sentence using humanly possible is a heading or in larger print than accompanying text. Humanly possible, though, is not in larger print than the other words in the sentence. An emphasis of the promotional campaign is that defendants will provide individualized, personal service and the fullest possible service. The term humanly possible highlights defendants' claimed ability to do all that is possible. Using "humanly" is consistent with the claimed personal and individualized nature

of the service. The campaign otherwise emphasizes human (employee) resources in contrast to capital resources. The term Human Age is also used repeatedly in promotional materials. The campaign also has an emphasis on being innovative and person-oriented. For the most part, the words humanly possible are not in capital or initial capital letters and are used with defendants' trademark.

Plaintiff concedes that it has no evidence of actual confusion. Plaintiff deals with sophisticated clients unlikely to be confused by defendants' advertising. Actual confusion is ordinarily an important factor in the likelihood of confusion determination, but not dispositive. Plaintiff contends evidence supports both forward confusion and reverse confusion, but the greater emphasis is on the latter. Forward confusion is a situation in which "the junior user attempts to capitalize on the senior user's good will and established reputation by suggesting that his product comes from the same source as does the senior user's product." *Patterson v. TNA Entm't, LLC*, 2006 WL 3091136 *14 (E.D. Wis. Oct. 27, 2006) (quoting *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 436 (7th Cir. 1999) (quoting *Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 (6th Cir. 1987))). "Reverse confusion occurs when a large junior user saturates the market with a trademark similar or identical to that of a smaller,

senior user. In such a case, the junior user does not seek to profit from the good will associated with the senior user's mark. Nonetheless, the senior user is injured because the public comes to assume that the senior user's products are really the junior user's or that the former has become somehow connected to the latter. The result is that the senior user loses the value of the trademark--its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." *Id.* (quoting ***Blastoff***, 188 F.3d at 436-37 (quoting ***Ameritech***, 811 F.2d at 964)). *See also **Custom Vehicles, Inc. v. Forest River, Inc.***, 476 F.3d 481, 484 (7th Cir. 2007). Plaintiff's only purported evidence of forward confusion is the fact it has been in business for ten years and the conclusory statement of plaintiff's President that such confusion is likely. *See* Pl. Reply [33] at 9 n.8 (citing Pl. Fact Stmt. ¶ 74). Such evidence is insufficient to support a genuine factual dispute. Discussion of the confusion factors will be limited to considering reverse confusion.

Turning to the likelihood of confusion factors, the first factor is the similarity of the marks in appearance and suggestion. How the marks are actually used should be considered. *See **Phoenix Int'l***, 653 F.3d at 456; ***Allen Bros., Inc. v. AB Foods LLC***, 2008 WL 345600 *3 (N.D. Ill. Feb. 6, 2008). Plaintiff

includes the mark in its name although not in solid capital letters. It consistently appears in a dark blue font as the dominant brand element. Defendants have not used a similar color for its use of the words humanly possible. Defendants use humanly possible in sentences, never as a stand-alone. No example is shown where defendants used humanly possible without using the Manpower mark or the mark of a Manpower brand. Defendants have not used humanly possible in a manner indicating it is a brand name.

As to similarity of products and manner of use, Right Management provides some of the same services as plaintiff. The other Manpower brands, though, provide other services. The evidence only supports that humanly possible is primarily used by Manpower to promote its other brands. It is only used on behalf of Right Management to the extent that all of Manpower's brands are being jointly promoted. Additionally, while there is some overlap of potential customers, Right Management generally targets a more geographically diverse audience than does plaintiff and generally does not target non-profit companies that are targeted by plaintiff.

As to the degree of care likely to be exercised by clients, confusion is less likely with the sophisticated, corporate customers that use defendants' services

and are targeted by defendants' promotions. *See Akoo Int'l, Inc. v. Harris*, 2011 WL 4007686 *4 (N.D. Ill. Sept. 9, 2011); *Minemyer v. B-Roc Representatives, Inc.*, 678 F. Supp. 2d 691, 709 (N.D. Ill. 2009). Plaintiff's customers, which include corporations, government entities, and some small businesses are also sophisticated.

As to the strength of plaintiff's mark, plaintiff contends it is strong because inherently distinctive in that it is suggestive. Plaintiff does not contend that there is evidence that its mark is strong because well-known in the market. However, "[t]he strength of a mark usually corresponds to its economic and marketing strength." *Autozone*, 543 F.3d at 933. The distinctiveness of a mark is relevant, but does not, by itself, establish that a mark is strong. *See Flagstar Bank, FSB v. Freestar Bank, N.A.*, 687 F. Supp. 2d 811, 832 (C.D. Ill. 2009); *SparkNet Commc'ns, L.P. v. Bonneville Int'l Corp.*, 386 F. Supp. 2d 965, 977 (N.D. Ill. 2005). Citing *Fisons Horticulture, Inc. v. Vigoro Ind., Inc.*, 30 F.3d 466, 479 (3d Cir. 1994),[3] plaintiff contends that, in reverse confusion cases involving a more economically powerful junior user, the strength-of-the-mark

---

[3]The Third Circuit subsequently limited the holding in *Fisons*. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000).

factor should focus on the junior user's (that is, Manpower's) ability to overwhelm and overshadow the senior user's use of the mark.

The evidence of defendants' use of humanly possible is in sentences while also emphasizing the Manpower and brand marks. Evidence does not support that humanly possible as a mark is being associated with defendants and thereby overwhelming plaintiff's use. The Third Circuit distinguishes commercial strength of the mark from conceptual strength. *A & H Sportswear*, 237 F.3d at 231. Under this theory, the conceptual strength of a mark contributes to the likelihood of reverse confusion even though the mark is not strong in the marketplace. The Seventh Circuit has not adopted such an approach for reverse confusion cases. One district case acknowledges the Third Circuit standard, but found it unnecessary to determine if it was applicable since the mark was weak both conceptually and in the marketplace. *See Chattanoga Mfg., Inc. v. Nike, Inc.*, 140 F. Supp. 2d 917, 927 n.10 (N.D. Ill. 2001), *aff'd as modified*, 301 F.3d 789 (7th Cir. 2002). Even viewing the mark conceptually in isolation from its recognition in the marketplace, it is not a particularly strong mark. The words are commonly used in everyday speech. Plaintiff contends it is suggestive because it takes some operation of the imagination to connect it with plaintiff's services.

See *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 952 (7th Cir. 1992); *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 776 (N.D. Ill. 2011). Humanly possible is a common phrase, not an unexpected combination of words. It is true that it does not directly identify the services provided by plaintiff, but selecting a common descriptive phrase that can be associated with the services provided does not automatically make for a strong mark. *See, e.g., Packman*, 267 F.3d at 646 (joy of six). *See also Arnold v. ABC, Inc.*, 2007 WL 210330 *4 (S.D.N.Y. Jan. 29, 2007) (state law dilution claim; common phrase "what's your problem" not a strong mark). Plaintiff provides no sufficient evidence either of promoting the mark or special uses that support finding it is a particularly strong mark.[4] It is not the weakest of marks, but the

---

[4]Defendants also provide evidence of five other companies, in other fields, using humanly possible as a mark, tag-line, or otherwise. There is, however, no evidence of the extent of such use, which would be essential to showing a crowded field that defendants contend exists. *In re Mighty Leaf Tea*, 601 F.3d 1342, 1346-47 (Fed. Cir. 2010); *Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1338 (Fed. Cir. 2001). Defendants contend it should not be put to the burden of showing the extent of use because, at plaintiff's initial urging, the parties agreed to proceed to summary judgment without discovery. That does not waive, for either side, the burden of providing evidentiary support for factual contentions. At most, it prevents either side from invoking Fed. R. Civ. P. 56(d) (formerly Rule 56(f)). *Cf. Sullivan v. City of Springfield*, 561 F.3d 7, 16 (1st Cir. 2009) (cited by defendants).

strength-of-the-mark factor does not particularly favor finding a likelihood of confusion.

As previously set forth, there is no evidence of actual confusion.

Plaintiff contends evidence supports that defendants acted in bad faith. It is undisputed that defendants were aware of plaintiff's mark. Defendants approached plaintiff in advance of its promotional campaign to request a limited license. Advance knowledge and seeking a license do not by themselves establish bad faith. *Packman*, 267 F.3d at 644-45. In its promotional campaign, defendants have not used humanly possible in promotions for Right Management only, the Manpower brand that provides services similar to plaintiff. Defendants prominently display their brand marks in the promotions using humanly possible and do not use humanly possible as a mark. The evidence does not support that defendants have attempted to palm off their services as those of plaintiff or that they have acted intentionally to overwhelm plaintiff's mark.

None of the factors particularly favor a finding of a likelihood of confusion. Defendants are entitled to summary judgment on the ground of a lack of a likelihood of confusion. It is unnecessary to also address the fair use issue.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment [32] is denied and defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: FEBRUARY 19, 2013